## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HOWARD FLOREY INSTITUTE
University of Melbourne
Parkville, Victoria
Australia, 3010

BAKER MEDICAL RESEARCH INSTITUTE
75 Commercial Rd. Melbourne, Victoria 3004
Melbourne, Victoria
Australia, 8008

CHRISHAN SURENDRAN SAMUEL
7 Peartree Way
Glen Waverley, Victoria
Australia, 3150

ROSS DAVID ALEXANDER BATHGATE
1/32 Wallace Street
Brunswick West, Victoria
Australia, 3055

GEOFFREY WILLIAM TREGEAR
62 Hawthorn Grove
Hawthorn, Victoria
Australia, 3122

XIAO-JUN DU
5/35 MacGowan Avenue
Glen Huntly, Victoria
Australia, 3163

        Plaintiffs,

v.

JONATHAN W. DUDAS, Under Secretary
of Commerce and Director of the
United States Patents and Trademark Office
c/o Office of the General Counsel
United States Patent and Trademark Office
Madison Building East, Room 10B20
600 Dulany Street
Alexandria, VA 22314

        Defendant.

Civil Action No.:

## COMPLAINT

## I.    NATURE OF THIS ACTION

1.    This is an action under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702-706, seeking judicial review of a final agency action, namely the PTO's decision to deny Plaintiffs' petition under 37 C.F.R. § 1.183 requesting that 37 C.F.R. §1.10 be waived so that Plaintiffs may receive a filing date which precedes the date on which their application was mailed by one day.

## II.    THE PARTIES

2.    Plaintiff Howard Florey Institute is a world-renowned Australian medical and research institute, with its principal place of business in Parkville, Victoria, Australia.

3.    Plaintiff Baker Heart Research Institute is Australia's most distinguished cardiovascular research centre, with its principal place of business in Melbourne, Victoria, Australia.

4.    Plaintiff Chrishan Surendran Samuel is an individual residing in Glen Waverley, Victoria, Australia.

5.    Plaintiff Ross Alexander David Bathgate is an individual residing in Brunswick West, Victoria Australia.

6.    Plaintiff Geoffrey William Tregear is an individual residing in Hawthorn, Victoria, Australia.

7.    Plaintiff Xiao-Jun Du is an individual residing in Glen Huntly, Victoria, Australia.

8.    Defendant Jonathan W. Dudas, Under Secretary of Commerce and Director of the United States Patents and Trademark Office ("PTO"), is a legal resident of the Eastern District of Virginia, and is named in his official capacity.

### III.    JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter of this action pursuant to 5 U.S.C. § 702-706, 28 U.S.C. §§1338(a) and 1361.

10.    Venue is proper in this district pursuant to 5 U.S.C. §§ 702-706, and 28 U.S.C.§1402(a).

### IV.    FACTS GIVING RISE TO COMPLAINT

11.    On May 19, 2005, after the law firm's office of Townsend and Townsend and Crew L.L.P. ("Townsend") was closed for the day, U.S. patent counsel representing the Plaintiffs received an urgent e-mail order letter from Plaintiffs' Australian patent attorney, with instructions to file the subject patent application on May 20, 2005. Attached to the e-mail was an electronic copy of the subject application.

12.    On the morning of May 20, 2005, U.S. patent counsel for Plaintiffs acknowledged receipt of the electronic mail. Counsel then prepared the application following the firm's standard procedures, and dispatched it via courier on the same day to the United States Post Office for Express Mail delivery to the PTO.

13.    Upon sealing the application in an Express Mail envelope and routing the same to the United States Post Office via courier for Addressee delivery, counsel confirmed to the Plaintiffs' Australian patent attorney by facsimile that the subject application was promptly filed on May 20, 2005 as instructed and to the best of counsel's knowledge at the time.

14.    After boarding a Bay Area Rapid Transit ("BART") train en route to the post office, the courier inadvertently fell asleep and awoke just as he heard the conductor announce his stop. At that point, the courier became distracted and his bag, containing the Express Mail documents and personal belongings, became separated from him.

15.     Upon reaching the Oakland Macarther BART station, the courier exited the train and immediately notified a clerk at the ticket booth that the bag with his belongings had been lost. The clerk telephoned ahead to the next stations on the route to alert them of the situation and advised the courier that nothing further could be done unless the bag was turned in, at which point they would notify him.

16.     The courier was stranded without any means of communication or transportation: he no longer had his car or house keys, he had no cell phone, and he had no money. Overwhelmed with confusion, disorientation and panic, the courier's ill-lucid state of mind and acute panic attack prevented him from employing any rational means for ensuring that the subject application was timely filed.

17.     After midnight, he eventually returned home, at which time he discovered a voice mail message from a BART clerk advising him that his bag had been found and that it would be available the next morning. By this time, the U.S. Post Office was closed and the filing deadline of May 20, 2005 had passed.

18.     The courier subsequently regained possession of the Express Mail documents on May 21, 2005. The application and other possessions previously lost were made available to him at the lost and found booth at 7:30 am at the BART terminal on that day.

19.     In the morning of May 21, 2005, counsel for Plaintiffs received communication from the designated courier that the package of documents containing the subject application, had been lost late in the evening on May 20, 2005 en route to the U.S. Post Office, and that it had been retrieved at the BART terminal at 7:30 am that morning.

20.    The courier returned the application documents to counsel for Plaintiffs, at which time they were redated and refiled as soon as practicable, approximately one hour after the U.S. Post Office opened for business on May 21, 2005.

21.    Plaintiffs submitted a petition to the Office of Petitions on October 31, 2005, to seek a waiver of 37 C.F.R. §1.10 so that Plaintiffs could receive a filing date of May 20, 2005, which precedes by one day the date on which their application was mailed.  This petition was dismissed via the mailing of a decision on November 18, 2005.

22.    Plaintiffs submitted a renewed petition on January 17, 2006, which was dismissed via the mailing of a decision on March 3, 2006.

23.    Plaintiffs submitted a second renewed petition on August 2, 2006.  This petition was denied via mailing of a final decision on January 19, 2007 (attached as Exhibit 1).

## V.    CAUSE OF ACTION FOR JUDICIAL REVIEW

24.    The Decision of the PTO to deny Plaintiffs' petition under 37 C.F.R. § 1.183 requesting that 37 C.F.R. §1.10 be waived so that Plaintiffs could receive a filing date which precedes the date on which their application was mailed was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, and is therefore unlawful and should be set aside under the APA, 5 U.S.C.§ 706.

25.    The Decision of the PTO not to exercise its authority under 37 C.F.R. § 1.183, and to waive 37 C.F.R. 1.10 so that the application would have a filing date of May 20, 2005, was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law, and is therefore unlawful and should be set aside under the APA, 5 U.S.C. § 706.

26.    Plaintiffs have suffered injury and harm as a result of the unlawful decisions of the PTO.

27.    The Decision of the PTO is a final agency action for which there is no other adequate remedy, and is therefore subject to judicial review under the APA, 5 U.S.C. § 704.

## VI.    RELIEF SOUGHT

WHEREFORE, Plaintiffs respectfully request entry of judgment in their favor and against defendant, as follows:

(A) Reversing the PTO's decision denying the petition;

(B) Directing the PTO to give the application its filing date of May 20, 2005;

(C) Awarding Plaintiffs such other and further relief as this Court may deem just and proper.

## VII.    JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues.


Dated:  March 19, 2007                    Respectfully submitted,

                                          Louis S. Mastriani (DC Bar No. 386820)
                                          Michael G. McManus (DC Bar No. 493422)
                                          David F. Nickel (DC Bar No. 469607)
                                          ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
                                          1200 Seventeenth Street, N.W., Fifth Floor
                                          Washington, DC 20036
                                          Telephone:  (202) 467-6300
                                          Facsimile:  (202) 466-2006

Madison C. Jellins
TOWNSEND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, CA 94301-1431
Telephone: (650) 326-2400
Facsimile:  (650) 326-2422

*Counsel for Plaintiffs Howard Florey Institute*



087520- 000000US
JS. WC

UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
WWW.USPTO.GOV

TOWNSEND & TOWNSEND
AND CREW LLP

JAN 3 0 2007

Paper No. None

TOWNSEND AND TOWNSEND AND CREW, LLP
TWO EMBARCADERO CENTER
EIGHTH FLOOR
SAN FRANCISCO CA 94111-3834

**COPY MAILED**

JAN 1 9 2007

**OFFICE OF PETITIONS**

In re Application of         :
Chrishan Surendran Samuel et :
al.                          :
Application No. 11/133,763   :   DECISION ON SECOND RENEWED
Filing Date: May 21, 2005    :   PETITION UNDER 37 C.F.R.
Attorney Docket Number: 087520- :   §1.183
000000US                     :
Title: PREVENTION OF FIBROSIS :
FOLLOWING CARDIAC INJURY     :


## Background

This is a decision on the second renewed petition filed August 2,
2006, pursuant to 37 C.F.R. §1.183, requesting that 37 C.F.R.
§1.10 be waived so that Petitioner may receive a filing date
which precedes the date on which his application was mailed.

The application was deposited on May 21, 2005 along with a
Utility Application Transmittal sheet which bears Express Mail
label EV606078565US, a declaration, claims, an abstract,
drawings, and an Application Data Sheet (ADS).

The original petition was submitted on October 31, 2005, and was
dismissed via the mailing of a decision on November 18, 2005. A
renewed petition was filed on January 17, 2006, which was
dismissed via the mailing of a decision on March 3, 2006. It is

noted that the present second renewed petition was accompanied by
a three-month extension of time.

With the original petition, Petitioner indicated that on May 20,
2005, at 5:55 PM, a courier who is employed by Petitioner's law
firm (identified only as "Mr. R.") left the firm with the above-
identified application in his bag.  Mr. R. boarded the Bay Area
Rapid Transit (BART) with the intent of traveling to the post
office, so that the application could be mailed via first class
mail, so as to secure a filing date of May 20, 2005.  Mr. R. then
fell asleep while on the train, and he awoke when the train
approached his stop.  Mr. R. then left the patent application on
the seat of the train when he debarked.  Mr. R. then suffered an
acute panic attack, and Petitioner asserted that due to this
panic attack, the courier was "not of sufficiently sound mind and
judgment to ensure in any way that the application be filed by
other means[1]."

Petitioner learned of these events the following morning, at
which time the application papers were re-dated, and filed with
the USPS on May 21, 2005.


## Applicable Statues and Rules


35 U.S.C. 21(a)

The Director may by rule prescribe that any paper or fee required to be filed
in the Patent and Trademark Office will be considered filed in the Office on
the date on which it was deposited with the United States Postal Service or
would have been deposited with the United States Postal Service but for postal
service interruptions or emergencies designated by the Director.


35 U.S.C. 111 (a)(4)

FAILURE TO SUBMIT.-Upon failure to submit the fee and oath within such
prescribed period, the application shall be regarded as abandoned, unless it
is shown to the satisfaction of the Director that the delay in submitting the
fee and oath was unavoidable or unintentional. The filing date of an
application shall be the date on which the specification and any required
drawing are received in the Patent and Trademark Office.


37 C.F.R. § 1.10(a)(1)

Any correspondence received by the U.S. Patent and Trademark Office (USPTO)
that was delivered by the "Express Mail Post Office to Addressee" service of

---

1 Original petition, page 3.

Application No. 11/133,763                                    Page 3
Decision on Renewed Petition

the United States Postal Service (USPS) will be considered filed with the
USPTO on the date of deposit with the USPS.


37 C.F.R. § 1.53 Application number, filing date, and completion of
application.

(a) Application number. Any papers received in the Patent and Trademark Office
which purport to be an application for a patent will be assigned an
application number for identification purposes.

(b) Application filing requirements - Nonprovisional application. The filing
date of an application for patent filed under this section, except for a
provisional application under paragraph (c) of this section or a continued
prosecution application under paragraph (d) of this section, is the date on
which a specification as prescribed by 35 U.S.C. 112 containing a description
pursuant to § 1.71 and at least one claim pursuant to § 1.75, and any drawing
required by § 1.81(a) are filed in the Patent and Trademark Office. No new
matter may be introduced into an application after its filing date. A
continuing application, which may be a continuation, divisional, or
continuation-in-part application, may be filed under the conditions specified
in 35 U.S.C. 120, 121 or 365(c) and § 1.78(a).

(1) A continuation or divisional application that names as inventors the same
or fewer than all of the inventors named in the prior application may be filed
under this paragraph or paragraph (d) of this section.

(2) A continuation-in-part application (which may disclose and claim subject
matter not disclosed in the prior application) or a continuation or divisional
application naming an inventor not named in the prior application must be
filed under this paragraph.


§ 1.183 Suspension of rules.
In an extraordinary situation, when justice requires, any requirement of the
regulations in this part which is not a requirement of the statutes may be
suspended or waived by the Director or the Director's designee, sua sponte, or
on petition of the interested party, subject to such other requirements as may
be imposed. Any petition under this section must be accompanied by the
petition fee set forth in § 1.17(h).
[47 FR 41278, Sept. 17, 1982, effective Oct. 1, 1982; revised, 68 FR 14332,
Mar. 25, 2003, effective May 1, 2003]


## Analysis

In order to submit a grantable petition under 37 CFR 1.183,
Petitioner must show (1) that this is an extraordinary situation
where (2) justice requires waiver of the rule. In re Sivertz, 227
U.S.P.Q. 255, 256 (Comm'r Pat. 1985).

Petitioner has not established that either condition exists in
this case.

With the decision on the original petition, it was indicated that it was not clear what other action Petitioner would have had the courier undertake after he had left the application on the train:

> Petitioner comments that this panic attack "prevented him (Mr. R) from employing any rational means for ensuring that the subject application be timely filed[2]." However, on a Friday night after the close of business hours with him on the ground and his bag on the train, proceeding to the lost and found office seems to be the best course of action he could have undertaken at that point. It is not clear what alternate course of action Petitioner believes Mr. R. should or would have taken, had his mind not been "overwhelmed with confusion, disorientation and panic[3]."

On the sixth page of this renewed petition, Petitioner has set forth that Mr. R. could have either used a public pay phone in the train station to make a collect call to the law firm, or he could have used the phone in the BART agent ticket booth. It is noted that with this second renewed petition, Petitioner has not explicitly set forth that there was anyone at the law firm after the close of normal business hours on a Friday evening to answer the phone. As such, even if Mr. R. would have telephoned the firm, it appears that he would have called an empty office.

Petitioner further speculates that Mr. R. could have contacted "many of the firm's attorneys [who] live within a small geographic distance of the office." It is noted that Petitioner has not set forth that Mr. R. had in his possession a roster of the home phone numbers and/or addresses of the firm's attorneys, nor has he set forth that Mr. R. had personal knowledge of this information at the time.

Petitioner additionally asserts that Mr. R. could have waited at the station, "for news of the retrieval of his bag[4]." It is not clear why this would not have resulted in an identical outcome. On the sixth and seventh pages of the original petition, Petitioner indicated that in a voice mail, the BART Clerk indicated that although the bag had been located on May 20, 2005, it would not be available until the next morning. Hence, even if Mr. R. had waited at the train station, he would not have been able to retrieve the bag until the passing of the May 20, 2005 deadline.

---

2 Original petition, page 4.
3 Id.
4 Second Renewed petition, page 7.

Petitioner asserts that "a reasonable person…would have attempted to contact the Firm to ask for help and instructions.  It is highly likely that the subject application would have been filed timely had Mr. R. telephoned the Firm[5]."  However, with no people at the firm after hours on a Friday night, and without the home addresses/phone numbers of the Firm's attorneys, it is not clear why Petitioner would arrive at this conclusion.

Moreover, the decision of November 18, 2005 also addressed the matter of the cause of the filing delay:

> Furthermore, since the PTO did not cause or contribute to Petitioner's filing delay, this case is even further removed from consideration as one where "justice requires" equitable relief[6]. It is well settled that a party's inadvertent failure to comply with the requirements of the rules or procedures before the USPTO is not deemed to be an extraordinary situation that would warrant waiver of the rules or procedures under 37 CFR §1.183[7].  Rather, as petitioner failed to properly deposit his application with the USPS in accordance with the requirements of 37 C.F.R. §1.10(a)(1), this is not an "extraordinary situation" where "justice requires" an extraordinary remedy.

With this second renewed petition, Petitioner has set forth that "Mr. R's inability to deliver the application was a direct result of his mental illness: an extraordinary situation[8]."  As set forth in footnote thirteen of the decision on the original petition, "it is noted in passing that page 4 of the Bernstein report makes it clear that Petitioner did not suffer from a panic attack until after the bag had been left on the train."  As set forth on the fifth page of the decision on the original petition,

---

5 Id. at 5.

6 See Helfgott & Karras, P.C. v. Dickinson, 209 F.3d 1328, 54 USPQ2d 1425 (Fed. Cir. 2000).

7 See Honigsbaum v. Lehman, 903 F. Supp. 8, 37 USPQ2d 1799 (D.D.C. 1995) (Commissioner did not abuse his discretion in refusing to waive requirements of 37 CFR 1.10(c) in order to grant filing date to patent application, where applicant failed to produce "Express Mail" customer receipt or any other evidence that application was actually deposited with USPS as "Express Mail"), aff'd without opinion, 95 F.3d 1166 (Fed. Cir.1996); Nitto Chemical Industry. Co., Ltd. v. Comer, 39 USPQ2d 1778, 1782 (D.D.C. 1994) (Commissioner's refusal to waive requirements of 37 CFR 1.10 in order to grant priority filing date to patent application not arbitrary and capricious, because failure to comply with the requirements of 37 CFR 1.10 is an "avoidable" oversight that could have been prevented by the exercise of ordinary care or diligence, and thus not an extraordinary situation under 37 CFR 1.183); Gustafson v. Strange, 227 USPQ 174 (Comm'r Pats. 1985) (Counsel's unawareness of 37 CFR 1.8 not extraordinary situation warranting waiver of a rule).

8 Second renewed petition, page 7.

The application was not deposited with the USPS because the courier fell asleep on a train and forgot to gather his belongings before departing the train. There is nothing extraordinary about this situation. Had the courier, an agent of the Petitioner, remained awake and retained dominion over his possessions, the loss would not have occurred. Remaining awake and remembering to take his items with him were circumstances which were entirely within his control, and the dispossession of the bag containing the application which resulted in the failure to secure the desired filing date for this application could have been avoided by the exercise of reasonable care and diligence. Equitable powers should not be invoked to excuse the performance of a condition by a party that has not acted with reasonable due care and diligence.

U.S. v. Lockheed Petroleum Services, 709 F.2d 1472, 1475 (Fed. Cir. 1983).

Petitioner admits that accidents which could have been prevented by the exercise of ordinary care or diligence do not give rise to extraordinary situations, and that a party's inadvertent failure to comply with Office rules does not rise to the level of an extraordinary situation[9]. On the eighth page of the second renewed petition, Petitioner sets forth:

> Mr. R.'s actions, *after loss of his possessions, (emphasis added)* were not the result of his not being duly attentive, but his complete inability to formulate and carry through a rational course of action. That is, it is not the loss of Mr. R.'s bag that the Petitioner submits is an 'extraordinary situation,' but the acute panic attack that ensued and the resulting inability to follow a rational, coherent means to recover the bag was extraordinary.

Petitioner's assertion misses the point. It was the inattentiveness of his courier that resulted in the loss of the bag. Had his courier stayed awake, and not left his bag on the train, the bag would not have been lost. The loss of the bag is what resulted in the failure to deposit this application with the USPS in a timely manner, and not any event which occurred subsequent thereto. Therefore, even if the Office were to accept Petitioner's assertion that the courier suffered an acute panic attack which impaired his ability to think in a rational manner, this does not change the fact that the courier appears to have been of sound mind and clear judgment at the time of his dispossession of the application. In summary, Petitioner has asserted that the courier suffered a mental impairment, however this disability occurred subsequent to the courier's loss of the

---

[9] Second renewed petition, pages 7-8.

present application.  But for the failure of Petitioner's
agent to remember to take his bag with him when he exited
the train, the application would have been timely filed.

It follows that it was the actions of his agent, and not the PTO,
which caused the delay in filing, and as such, this case is even
further removed from consideration as one where justice requires
equitable relief.

Regarding the case of Sturzinger v. Commissioner of Patents,
181 USPQ 436 (DC DC 1974), Petitioner has asserted on second
renewed petition that this case stands for the proposition
that the filing date this application should receive is not
the date on which it was deposited with the Office, but
rather the date on which the applicant *intended* to deposit
it with the Office[10].  Such is not the case.

Petitioner's representative has asserted that the court in
Sturzinger accorded the application a filing date of the
date on which the applicant intended to file the
application, but this is inaccurate.

As set forth on pages 6-7 of the decision on the original
petition:

> Petitioner would have the Office assign the date on which he
> intended (emphasis included) to file the application with the USPS
> as his filing date.  However, in Sturzinger, the Plaintiff neither
> sought nor received the date of March 23, 1971 as his filing date,
> the date on which he intended (emphasis included) to file the
> application with the Office.  **The date which the Plaintiff both
> sought and received was the date on which the package was received
> by the PTO** (emphasis added).  With the present application, the
> date which the application received as a filing date was the date
> on which the application was deposited with the PTO (pursuant to
> 37 C.F.R. §1.10(a)(1), filing an application with the USPS will be
> considered as filed with the USPTO if the Applicant utilizes the
> "Express Mail Post Office to Addressee" service of the USPS).  As
> such, it would appear that the PTO accorded Petitioner the same
> treatment by the PTO as the Court awarded the Plaintiff in the
> case cited by Petitioner, however **Petitioner would have the Office
> provide a disparate filing practice** (emphasis added).

In Sturzinger, the applicant deposited the application with
the USPS on March 23, 1971, and the mail was stolen
subsequent to the deposit, *while in the custody of the USPS*.
A substantially similar application (but including a
photocopy of the declaration) was later deposited directly
with the Office on April 13, 1971.  An original declaration
was subsequently filed with the Office on July 12, 1971, and
the Office accorded this date as the filing date of the
application.  The court awarded the date of April 13, 1971 –
the date on which an incomplete set of papers were received

---

10 Second renewed petition, pages 8-10.

Application No. 11/133,763                                    Page 8
Decision on Renewed Petition

in the Office.  This contrasts with the present set of
facts, as Petitioner would have the Office accord a filing
date of the day before any papers were received in the
Office.

The present set of facts is further distinguished from the
situation in Sturzinger, as Sturzinger involved the "theft
or loss of documents from the mails,"[11] and it is well
settled that patent applicants are entitled to rely upon the
ordinary and trustworthy agency of the mail[12].  With the
present set of facts, the application was not stolen from
the Post Office after it was deposited with the same, but
rather it was left behind on a train because the courier
fell asleep and forgot to gather his belongings when he
awoke.

Finally, the decision of November 18, 2005 indicated the
following:

> 35 USC 111(a)(4) conditions the filing date as "the date on which
> the specification and any required drawing are received in the
> Patent and Trademark Office."  35 USC 21(a) includes a deposit
> with the USPS via the USPS Express Mail service in the definition
> of "received in the Patent and Trademark Office."
>
> The granting of Petitioner's request for a filing date of May 20,
> 2005 - the day before "the specification and any required
> drawing" were received in the PTO - would require the waiver of 35
> USC 111(a)(4), and this cannot be done, for a Rule cannot be
> relaxed in contravention of any Law.

Regarding the waiver of a statute, Petitioner has asserted that
"in cases of postal service interruptions or emergencies, patent
applications are granted the filing dates they would have
received, but for the service interruption or emergency[13]."

35 U.S.C. § 21(a) sets forth, *in toto*:

> (a) The Director may by rule prescribe that any paper or fee
> required to be filed in the Patent and Trademark Office will be
> considered filed in the Office on the date on which it was
> deposited with the United States Postal Service or would have been
> deposited with the United States Postal Service but for postal
> service interruptions or emergencies designated by the Director.

---

11 Sturzinger at 437.
12 *In re Katrapat, AG*, 6 U.SPQ 2d 1863, 1866 (1988).  See also Ex parte Pratt,
1887 Dec. Comm'r Pat. 31, 32-33 (Comm'r Pat. 1887); *In re Matullath*, 38 App.
D.C. 497, 514-15 (1912); *Winkler v. Ladd*, 221 F.Supp. 550, 552, 138 USPQ 666,
667-68 (D.D.C. 1963), aff'd , 143 USPQ 172, 172 (D.C. Cir. 1964).
13 Petition, page 11.

Petitioner would have the Office consider the courier's "medical emergency…be considered an emergency so designated by the Director.[14]"  As set forth above, the acute panic attack did not result in the failure of the present application to receive the filing date which Petitioner would prefer – it was <u>the courier's abandonment of his bag</u> which resulted in the delay in depositing the present application with the USPS.   This event was entirely within the control of the courier, an agent of Petitioner's representative, and as such, it does not rise to the level of an emergency.

Finally, Petitioner has asserted that since the application spent the night under the exclusive control of the BART station, "the BART lost and found was a proxy for the U.S.P.S," and as such, the "stated goals of Rule 10 were satisfied[15]."

Rule §1.10 sets forth that any correspondence that is received by the Office will be considered filed with the USPTO on the date of deposit with the USPS, when the correspondence is deposited with the USPS and is delivered to the Office by the "Express Mail Post Office to Addressee" service of the USPS.  Petitioner has further submitted that the rationale behind the implementation of the rule is that the date of deposit with the USPS is "verified by a *disinterested* (emphasis included) USPS employee[16]."  In the present situation, the correspondence was deposited not with the USPS, but rather was left behind on a train, found by the woman who had been sitting next to the courier[17], and eventually deposited with the BART lost and found department by an unspecified means.  Petitioner cannot rely on Rule §1.10 to have the application accorded a filing date that is prior to the date on which the correspondence was deposited with the USPS.


## Conclusion

The petition is **DENIED**[18].

The application will retain a filing date of May 21, 2005.

---

14 <u>Id</u>.
15 <u>Id</u> at 13..
16 Second renewed petition, page 12.
17 Bernstein report, page 3.
18 This decision may be regarded as a final agency action within the meaning of 5 U.S.C. §704 for the purposes of seeking judicial review.  <u>See</u> MPEP 1002.02.

Application No. 11/133,763                                        Page 10
Decision on Renewed Petition

**THERE WILL BE NO FURTHER RECONSIDERATION OF THIS MATTER BY THIS OFFICE.**

Telephone inquiries should be directed to Senior Attorney Paul Shanoski at (571) 272-3225.

Charles Pearson
Director
Office of Petitions
United States Patent and Trademark Office

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| HOWARD FLOREY INSTITUTE<br>University of Melbourne<br>Parkville, Victoria<br>Australia, 3010, et al. | JONATHAN W. DUDAS, Under Secretary of Commerce and Director of the United States Patents and Trademark Office |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Louis S. Mastriani (DC Bar No. 386820)
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1200 Seventeenth Street, N.W., Fifth Floor
Washington, DC 20036
Telephone:  (202) 467-6300

ATTORNEYS (IF KNOWN)

Office of the General Counsel
United States Patent and Trademark Office
Madison Building East, Room 10B20600
Dulany Street
Alexandria, VA 22314

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 2 U.S. Government Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

□ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

◉ **C. Administrative Agency Review**

□ 151 Medicare Act

Social Security:
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)
Other Statutes
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

Real Property
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

Personal Property
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

Bankruptcy
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

Prisoner Petitions
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

Property Rights
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

Federal Tax Suits
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

Other Statutes
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting & Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-Employment<br>☐ **446** Americans w/Disabilities-Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment & Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☉ **1** Original Proceeding  ☐ **2** Removed from State Court  ☐ **3** Remanded from Appellate Court  ☐ **4** Reinstated or Reopened  ☐ **5** Transferred from another district (specify)  ☐ **6** Multi district Litigation  ☐ **7** Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C §§702-706 : Violation of Administrative Procedure Act

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ **JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

**DATE** 3/19/2007    **SIGNATURE OF ATTORNEY OF RECORD** _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.